## DE MOLTKE–HUITFELDT v. GARNER & CO.

(Supreme Court, Appellate Division, First Department. July 7, 1911.)

1. USURY (§ 83*)—DEFENSE OF USURY BY CORPORATION.

After death of G., whose will provided that his business should be carried on in the name of G. & Co. by his executors and their successors, plaintiff, G. & Co., was incorporated to carry on such business, and take over the property of the estate, and later, by a special act, it was appointed administrator with the will annexed and trustee under his will. *Held* that, as to money which it borrowed in carrying out its purposes. General Business Law (Consol. Laws 1909, c. 20) § 374, providing that no corporation shall interpose the defense of usury, was applicable.

[Ed. Note.—For other cases, see Usury, Cent. Dig. §§ 163–166; Dec. Dig. § 83.*]

2. USURY (§ 18*)—USURIOUS CONTRACT.

Defendant's agreement, in consideration of plaintiff selling stocks and loaning the proceeds to defendant, to repay the same with 5½ per cent. interest, and, in addition, the amount of any increase in the price of the stock during the time of the loan, is not an usurious contract.

[Ed. Note.—For other cases, see Usury, Dec. Dig. § 18.*]

Ingraham, P. J., dissenting.

Submission of controversy on an agreed statement of facts between Leon de Moltke-Huitfeldt, as plaintiff, and Garner & Co., as trustee of the estate of William T. Garner, deceased, and administrator with the will annexed, as defendant. Judgment for plaintiff.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Masten & Nichols (Albert G. Milbank, of counsel, and Swinburne Hale, on the brief), for plaintiff.

Byrne & Cutcheon (William R. Begg, of counsel), for defendant.

CLARKE, J. William T. Garner died July 20, 1876, leaving a last will and testament by which he directed that his executors should continue the business in which he had been theretofore engaged, the income and profits therefrom to be paid in certain proportions to his wife and children. Said business had been conducted under the name "Garner & Co.," and he had owned the stock of a number of corporations which manufactured and sold cotton goods, prints, and merchandise.

In January, 1899, the defendant was duly organized under the laws of the state of New York for the purpose of carrying on the said business and taking over all of the property of said estate. In 1904,

pursuant to authority conferred by special act of the Legislature (chapter 39, Laws 1899), the corporation, in an action brought for that purpose, was duly appointed administrator with the will annexed of the estate of said Garner, deceased, and trustee under the said will and has since acted as such trustee and administrator. Since prior to October, 1909, defendant has been engaged in liquidating its affairs, and in said month of October found itself under the necessity of raising without delay upwards of $250,000 in cash. While its assets had a value of $15,000,000 as opposed to liabilities of approximately $5,000,000, exclusive of capital and surplus, nevertheless its resources were not of a character that could be promptly turned into cash to meet its immediate requirements. The president and vice president applied to the plaintiff, who is a director and the husband of one of the beneficiaries under the will of Garner, and requested a loan of $290,000. The plaintiff then held 15,500 shares of stock in railroad and industrial companies which he had bought and was carrying on a twenty per cent. margin, which the plaintiff believed were then selling considerably below their true value, and would in time enjoy a substantial increase in price. He informed the said officers that he was unable to make the loan as requested without disposing of the securities in question and foregoing the opportunity of realizing upon the purchase that he had made. The said officers stated that they were of the opinion that, if the plaintiff would sell the aforesaid securities and devote the proceeds of such sale after discharging his obligations incident upon the purchase thereof to the making of a loan to the defendant in the desired amount, the defendant would in consideration of such loan agree to pay to the plaintiff the amount of such loan with interest at $5\frac{1}{2}$ per cent. per annum, and, in addition thereto, such sum as would represent the rise, if any, in price of the said shares occurring during the interval between the date of the loan and the date of payment thereof, together with the amount of any dividends on the said stocks between the said dates and the cost to plaintiff of making the sale of said shares of stock. Plaintiff agreed and the board of directors passed a resolution authorizing its officers to make the agreement as proposed. Plaintiff sold the shares of stock and loaned to the defendant $259,000. By reason of said loan, defendant was substantially aided in its credit, and has since that time liquidated its business and is in sound financial condition. This transaction was consummated on October 25th. On the last day of October, the plaintiff, being advised that the stocks which he had disposed of in order to make the said loan were enhancing in value and being of the opinion that a further rise was likely, suggested to the defendant that, unless settlement of the loan were made shortly, the loss to it under the aforesaid agreement would be severe. Accordingly the 1st of November, 1909, was set by the parties as the day of settlement, and on that day defendant made and delivered to the plaintiff its promissory demand note for $61,862.50, which was given pursuant to and in settlement of the agreement of October 25th, and was intended to cover the cost of selling the said stocks and the amount of the rise in their value between the said date and November

1st. The difference between what the plaintiff actually received for said shares of stock on the day he sold them and what he would have received had he disposed of them on November 1st was $60,375, and the cost of selling was $1,487.50. The said stocks continued to increase in market value for a considerable period subsequent to November 1st. Thereafter defendant paid the plaintiff in various installments at its convenience the principal of the said sum loaned with interest at 5½ per cent. per annum, finally liquidating the same altogether on or about the 25th day of July, 1910. Shortly thereafter the then president of the defendant stated to plaintiff that some question had arisen as to whether or not the said, note of November 1st was voidable, and refused to pay, and invited the plaintiff to present the question of liability to the Appellate Division.

The following question was submitted: Has the defendant any valid defense under the laws of the state of New York to the payment of the said note? If the court shall determine the defendant has no valid defense, judgment shall be rendered for plaintiff for $61,862.50, with interest from November 1, 1909, and costs; otherwise judgment shall be rendered for plaintiff for the sum of $1,487.50 with interest from November 1, 1909, without costs to either party.

The plaintiff took no part in the meeting of the directors which authorized the transaction, and no claim is made against him of any impropriety growing out of his relations to the company.

[1] The defendant urges that the transaction was usurious. The plaintiff submits that the defendant cannot interpose the defense of usury; section 374 of the general business law, formerly chapter 172 of the Laws of 1850, providing as follows:

"No corporation shall hereafter interpose the defense of usury in any action. The term corporation as used in this section shall be construed to include all associations and joint stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships."

The defendant undertakes to avoid the statute by making this claim:

"This statute prevents a corporation from pleading usury only on its own contracts, made in its own right and for its own benefit. Here the contract was made by the defendant not in its own right or for its own benefit but in its capacity as administrator with the will annexed and trustee of the estate of William T. Garner. The contract is the contract of the estate."

The contract is signed:

"Garner & Co., trustee of the estate of William T. Garner, deceased, and administrator with the will annexed. Oscar Hussa, V. P."

The original note is so signed. But the agreed statement of facts states that the defendant was duly organized for the purpose of carrying on the said business and taking over all of the property of the said estate; and it also is agreed that the defendant had been engaged in liquidating its affairs and found itself under the necessity of raising without delay upwards of $250,000 in cash. While its assets exceeded its liabilities, nevertheless its resources were not of a character that could be promptly turned into cash to meet its immediate requirements. The loan was made to the defendant upon the contract authorized by its directors, and it is agreed "by reason of the said loan the

defendant was substantially aided in its credit and has since that time liquidated its business and is in sound financial condition." So that the distinction which the defendant now seeks to make seems to be not supported by the agreed statement of facts. The contract was made by the defendant in its own right and for its own benefit and it is so stated.

This seems to be a peculiar corporation. Under the will of Garner, it was provided that the executors, their survivors or successors, "shall prosecute and carry on with my estate and property my present business under the firm name of Garner & Co. for and during the lifetime of my wife Mary Marcellite and my daughter Florence, and the survivors of them, and that all profits and gains arising from said business shall after the sum set apart for the support of my wife and children, are deducted, as hereinafter provided, be added to and form a part of the working capital of my estate." This corporation was organized in 1899, many years after the death of Garner, for the purpose of carrying on his former business of Garner & Co. and taking over all the property of the estate, and five years afterwards, pursuant to a special act of the Legislature, it was appointed administrator with the will annexed and trustee under the said will.

It seems to me difficult, if not impossible, upon the agreed statement of facts, to separate the corporation from the corporation as administrator and trustee, and I think that the statute prohibiting the defense of usury is applicable. It does not seem reasonable that the estate could avail itself of the special privileges conferred by law upon a corporation and at the same time repudiate the limitations placed by law upon a corporation. It enjoys perpetuity and limited liability, and must in return therefor assume the obligation of inability to repudiate its agreements upon the ground of usury.

[2] In the second place I think this was not an usurious transaction. The plaintiff had a large amount of stock which he had purchased for the purpose of a profit. In its necessity the defendant asked him for a loan. He said, "I have not the money to make a loan to you, but I have this stock, and, if you will indemnify me against a loss of profits, I will sell the stock and loan you the money." Defendant agreed.

In Snow v. Nye, 106 Mass. 413, plaintiff sold stock which he owned, and lent defendant the proceeds upon his agreement to repay the sum lent with interest, and with any advance in the market value of the stock during the time of the loan. The stock advanced in market value until at the end of the time the parties came to a settlement. Plaintiff took defendant's promissory note for the amount due upon the agreement. Chapman, C. J., said:

"The jury have found that the original contract in reference to the stock was entered into in good faith, and was not used as a cover for usury. It was not, then, a mere contract for the loan of money; but, as the plaintiff had no money to lend when the application for the loan was made, he agreed to do a preliminary act, which consisted of the sale of valuable property, the value of which might rise in the market. By selling it he sacrificed the chance of gaining any advantage from this rise. This was a good consideration for the defendant's promise to indemnify him against loss, and we cannot say that it was unconscionable to require such indemnity. If the stock

should not rise, he would get nothing. If it should rise, his loss of profits would be equal to the sum he was to receive on account of it."

The case at bar is similar. The plaintiff within six days after the transaction, the market going up, told the defendant it had better make a settlement and it was made, thereby saving it, as the outcome establishes, a large amount of loss. We think there was sufficient consideration for the indemnity and that plaintiff is entitled to recover. He had his stock. He was entitled to the anticipated profits. He acted promptly. He is entitled to his bargain.

On the case as submitted, the plaintiff should have judgment for $61,862.50, with interest from November 1, 1909, with costs.

McLAUGHLIN and SCOTT, JJ., concur.

DOWLING, J., concurs in the result reached, on the ground that the defendant corporation cannot interpose the defense of usury.

INGRAHAM, P. J. (dissenting). The controversy that is submitted here is between the plaintiff and the estate of William T. Garner, acting through Garner & Co., a corporation who had been appointed as trustee to carry out the trust provided for in the will of the testator; and the question presented must necessarily depend upon whether the estate is liable upon the note given by the trustee to the plaintiff. The question as to whether the corporation individually is liable or whether it could interpose the defense of usury is not presented. Nor is the question presented as to whether the trustee on an accounting would be allowed the amount of this note if it paid the amount due to the plaintiff. It seems to me that the sole question that we have to determine is whether the plaintiff could maintain an action against the defendant as trustee and obtain a judgment which would bind the trust estate. The defendant as trustee borrowed of the plaintiff the sum of $259,000. The note representing this loan was payable on demand. The plaintiff was to have 5½ per cent. interest, and, in addition to that, such sum as would represent the rise, if any, in the price of certain shares of stock which the plaintiff had purchased, and which he was carrying on a margin of 20 per cent., occurring during the interval between the date of the loan and the date of payment thereof, together with the amount of any dividends on the said stocks between said dates, and the cost to the plaintiff of making a sale of said shares of stock. The loan was made on the 25th of October, 1909, and on the 31st day of October the parties agreed as to the amount that the defendant should pay as additional interest on the loan, fixing that amount at $61,862.50, and for that the note in controversy was given. This note was dated November 1, 1909, and was payable on demand. The plaintiff therefore on November 2d could have demanded payment of these two notes, and thus received the sum of $61,862.50 and 5½ per cent. interest for a loan of $259,000 for a period from October 25, 1909, to November 2, 1909. As a matter of fact, the note was not paid for some time after, but that, it seems to me, does not affect the proposition. I do

not think that this transaction represented any claim that could be enforced against the estate of which the defendant is trustee, and, if any liability existed, it was against the defendant individually, and not as trustee.

I think, therefore, there should be judgment for the defendant.